**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CULTURAL CARE, INC.<br><br>    Plaintiff,<br><br>  v.<br><br>AXA INSURANCE COMPANY<br><br>    Defendant. | **CASE NO.**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, Cultural Care, Inc. ("Cultural Care"), brings this action to obtain the benefits to which it is entitled under insurance policies issued by defendant AXA Insurance Company ("AXA"). Cultural Care has paid substantial sums defending a putative class action filed against Cultural Care and others in the United States District Court for the District of Colorado, captioned *Beltran, et al. v. Interexchange, Inc.*, Case No. 1:14-cv-03074-CMA-CBS (D. Colo.) (the "Beltran Suit"). Because AXA has failed to honor its obligation to defend Cultural Care in connection with the Beltran Suit, Cultural Care seeks to recover money damages on account of AXA's breach of the policy. Cultural Care also seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, et seq., that AXA remains obligated to defend Cultural Care in connection with the Beltran Suit.

## PARTIES

1. Plaintiff Cultural Care is a Massachusetts corporation that maintains its principal place of business in Cambridge, Massachusetts. Cultural Care is a United States State Department-designated sponsor of a federal cultural exchange program under which foreign au pair exchange visitors are afforded the opportunity to live in the United States, attend a U.S. post-secondary educational institution, and participate in the home life of an American host family. The au pair program is one of several U.S. cultural exchange programs that are governed by the Mutual Educational and Cultural Exchange Act of 1961 (Fulbright-Hays Act), 22 U.S.C. § 2451, et seq. and Department of State ("DOS") regulations 22 C.F.R. § 62, et seq.

2. On information and belief, the defendant AXA is a New York corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3. Jurisdiction is based upon 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000 and the controversy is between citizens of different states.

4. Venue is proper under 28 U.S.C. §§ 1391(b)(2) and (3), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and AXA is subject to personal jurisdiction in this district.

## THE POLICIES

5. In exchange for the premium(s) due thereunder, AXA issued to EF Travel, Inc., and all Subsidiaries and Affiliates, and Other Named Insureds, including Cultural Care, insurance policies providing coverage for the Policy Periods October 1, 2013 to October 1, 2014 (Policy No. PCS001344(13), the "2013 Policy") and October 1, 2014 to October 1, 2015 (Policy

No. PCS001344(14), the "2014 Policy") (together, the "Policies").  Each of the Policies includes, at Endorsement # 8, a Travel Agents and Tour Operators General and Professional Liability Policy, pursuant to which AXA agreed, *inter alia*:

- to "pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as Damages because of a negligent act or negligent omission committed by the Insured or any person for whose acts the Named Insured is legally liable in the conduct of [All Operations] by the Named Insured, but only if such negligent act or negligent omission takes place in the 'coverage territory' and occurs during the Policy Period." (Endorsement # 8, Section I.A.4, as modified by Endorsement # 9); and that

- "We shall have the right and duty to defend any Suit against the Insured seeking Damages on account of such . . . 'negligent act' or 'negligent omission' . . . to which this insurance applies, even if any of the allegations of the Suite [sic] are groundless, false or fraudulent." (Endorsement # 8, Section I.B.)

6. Each of the Policies defines "Insured" as including "any person or organization qualifying as such under the PERSONS INSURED section of this policy," which includes "[t]he Named Insured shown on the Declaration of this policy."  (Endorsement # 8, Section III.A.)

7. Pursuant to Endorsement # 1 of each of the Policies, Cultural Care is a Named Insured.

8. Each of the Policies provides coverage for "All Operations" of Cultural Care. (Endorsement # 9.)

9. The definition of "Suit" in the Commercial General Liability Coverage Form of the Policies includes "a civil proceeding in which damages because of [a negligent act or negligent omission] to which this insurance applies are alleged."  (CG 00 01 12 07 and CG 00 01 04 13, at Section V(18); *see* Endorsement # 8, Section I.B.)

10.     The definition of "coverage territory" in the Commercial General Liability Coverage Form of the Policies includes "[t]he United States of America."  (CG 00 01 12 07 and CG 00 01 04 13, at Section V(4).)

11.     Each of the Policies defines "Claim" as "a written demand for money or services."  (Endorsement # 8, Section IV.A.)

12.     The Limit of Liability for covered Damages (as defined) under each of the Policies is $5,000,000 (USD).  (*See* Endorsement # 8, Section V; Commercial General Liability Declarations.)

13.     Each of the Policies defines "Damages" as "the monetary portion of any judgment, award or settlement . . .."  Legal fees and other costs and expenses of defending the Suit are not included within the definition of "Damages."  (Endorsement # 8, Section IV.B.)

14.     Under each of the Policies, the costs of defending a covered Claim or Suit are deemed Supplementary Payments, which do not erode the Limit of Liability for Damages and are not subject to the Policies' self-insured retentions or deductibles for Bodily Injury Liability and Property Damage Liability.  (Endorsement # 8, Sections I.B and I.C; CG 00 01 12 07 and CG 00 01 04 13, at Section I – Supplementary Payments.)

**THE BELTRAN SUIT**

15.     On or about November 13, 2014, Johana Paola Beltran, on behalf of herself and other participants in the federal au pair program, filed a putative class action complaint alleging a variety causes of action against Cultural Care, among others, arising from its activities as a designated "sponsor" of the au pair program.  The Complaint was served on Cultural Care on January 9, 2015.

16. On March 13, 2015, the plaintiff amended her complaint adding, among other things, additional allegations and counts against Cultural Care and others. The First Amended Complaint asserted ten counts against Cultural Care, as set forth below:

- Count I: Unreasonable restraint of trade in violation of the Sherman Act, 15 U.S.C. §§ 1 *et seq.*

- Count II: Civil RICO, 18 U.S.C. § 1964(C)

- Count III: Breach of fiduciary duty under the laws of several states and the District of Columbia

- Count IV: Negligent misrepresentation under the laws of the several states and the District of Columbia

- Count V: Constructive fraud or fraudulent concealment under the laws of the several states and the District of Columbia

- Count VI: Consumer protection under the laws of the several states and the District of Columbia

- Count VII: Breach of contract and quasi contract

- Count VIII: Failure to pay minimum wage in violation of Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA")

- Count IX: Claims for unpaid wages under the laws of several states and the District of Columbia

- Count X: Violations of New York Wage Act

17. With reference to Count IV of the First Amended Complaint, specifically, plaintiffs alleged that Cultural Care "made misstatements of material facts for the au pairs' guidance . . . , including but not limited to the legality and set nature of the wages. . . . The Sponsors failed to act with due care or competence when obtaining and relaying this information and had a duty to know that the information could not be true." (First Amended Complaint ¶ 487; *see also* Second Amended Complaint ¶ 587.)

18. Plaintiffs alleged, for example, that Cultural Care:

- required au pairs to attend a roughly one-week training in New York at which agents of Cultural Care allegedly told them that "the au pair stipend is exactly $195.75 per week and no more." (First Amended Complaint ¶¶ 379-381; *see also* Second Amended Complaint ¶¶ 421-423.);

- "told the au pairs that a law existed that set the wage at $195.75 and by implication that this wage was legal" and that Cultural Care "negligently failed to examine whether it was true or false." (First Amended Complaint ¶ 223; *see also* Second Amended Complaint ¶ 236.); and

- "failed to exercise reasonable care when they informed the au pairs that the stipend could not be adjusted, and the au pairs suffered by not being able to negotiate to a wage at or approaching the normal nanny market . . .." (First Amended Complaint ¶ 243; *see also* Second Amended Complaint ¶ 256.)

19. Cultural Care promptly notified AXA of the Beltran Suit.

20. On April 20, 2015, AXA sent to Cultural Care a letter in which it "denie[d] coverage under the Policy" and stated that AXA "will neither defend nor indemnify Cultural Care for the First Amended Complaint, nor reimburse it for any damages, costs or expenses."

21. On July 15, 2015, AXA sent to Cultural Care another letter with an "update" regarding AXA's coverage position. In the July 15, 2015 letter, AXA modified the bases for its disclaimer of coverage, but continued to "den[y] coverage under the Policy," stating again that AXA "will neither defend nor indemnify Cultural Care for the First Amended Complaint, nor reimburse it for any damages, costs or expenses." AXA's disclaimer letters made no reference to the allegations in the First Amended Complaint seeking damages for injury allegedly suffered by the plaintiffs on account of Cultural Care's alleged negligent misrepresentations.

22. On October 17, 2016, the plaintiff further amended her complaint to modify the named plaintiffs and defendants and add an eleventh count against defendant AuPairCare for violations of the New Jersey Wage Act. The allegations in the Second Amended Complaint

concerning Cultural Care's alleged negligent misrepresentations are identical to the allegations in the First Amended Complaint.  (*See*, *e.g.*, Second Amended Complaint ¶ 587.)

23.     Cultural Care has incurred substantial defense costs responding to the Beltran Suit.

24.     AXA has not paid or reimbursed Cultural Care for any of the defense costs incurred by Cultural Care in connection with the Beltran Suit.

## COUNT I: BREACH OF CONTRACT

25.     Cultural Care realleges and incorporates herein by reference paragraphs 1-24.

26.     Each of the Policies constitutes a binding contract of insurance.

27.     All premiums due under the Policies have been paid.

28.     Cultural Care is a Named Insured under each of the Policies.

29.     The Beltran Suit is a "Claim" and "Suit" as those terms are used and/or defined in the Policies, Endorsement # 8.

30.     The allegations made by plaintiffs in the Beltran Suit concern negligent acts and negligent omissions allegedly committed by Cultural Care in the conduct of Cultural Care's operations.

31.     The allegations made by plaintiffs in the Beltran Suit concern negligent acts and negligent omissions that allegedly occurred in the "coverage territory" and during the Policy Period of one or both of the Policies.

32.     Plaintiffs in the Beltran Suit seek "Damages," as defined in the Policies, Endorsement # 8, on account of the alleged negligent acts and negligent omissions of Cultural Care, as described in the First and Second Amended Complaints.

33. Cultural Care promptly notified AXA of the Beltran Suit.

34. Cultural Care has satisfied all conditions necessary to invoke AXA's obligation under one or both of the Policies to defend Cultural Care in connection with the Beltran Suit.

35. AXA has expressly disclaimed any obligation under the Policies, stating that "AXA will neither defend nor indemnify Cultural Care for the First Amended Complaint, nor reimburse it for any damages, costs or expenses."

36. AXA has not paid or reimbursed Cultural Care for any of the substantial defense costs incurred by Cultural Care in connection with the Beltran Suit.

37. As a consequence of the foregoing, AXA has breached its duty under one or both of the Policies to defend Cultural Care in connection with the Beltran Suit.

38. As a result of AXA's breach of its obligations, Cultural Care has suffered, and will continue to suffer, substantial damages.

## COUNT II: DECLARATORY JUDGMENT

39. Cultural Care realleges and incorporates herein by reference paragraphs 1-38.

40. This count seeks declaratory relief pursuant to 28 U.S.C. § 2201.

41. AXA has refused to defend Cultural Care in connection with the Beltran Suit.

42. A controversy exists between the parties concerning AXA's obligation to defend Cultural Care in connection with the Beltran Suit, which is still being litigated.

43. Cultural Care is entitled to a declaration that one or both of the Policies obligates AXA to defend Cultural Care in connection with the Beltran Suit, and that such obligation to defend requires AXA to reimburse Cultural Care for any amounts it has reasonably incurred, and may reasonably incur in the future, to defend the Beltran Suit.

## RELIEF REQUESTED

WHEREFORE, Cultural Care requests that this Court:

a. Enter judgment in an amount equal to the damages Cultural Care has incurred as a result of AXA's breach of its obligations under the Policies with respect to the Beltran Suit, plus interest;

b. Declare that one or both of the Policies obligates AXA to defend Cultural Care in connection with the Beltran Suit, and that such obligation to defend requires AXA to reimburse Cultural Care for any amounts it has reasonably incurred, and may reasonably incur in the future, to defend the Beltran Suit; and

c. Grant such other and further relief as may be just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**


Dated:  December 28, 2017

Respectfully submitted,

CULTURAL CARE, INC.

By its attorneys,

*s/ Diane R. Hazel*
James M. Lyons
Diane R. Hazel
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 Seventeenth Street, Suite 3000
Denver, CO 80202
Telephone: 303-623-9000
Fax: 303-623-9222
Email: jlyons@lrrc.com
　　　　dhazel@lrrc.com
**Attorneys for Plaintiff Cultural Care, Inc.**