IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-03153-RBJ

CULTURAL CARE, INC.

    Plaintiff,

v.

AXA INSURANCE COMPANY

    Defendant.

# ORDER ON PENDING MOTIONS

This matter comes before the Court on defendant AXA Insurance Company's ("AXA") Motion to Dismiss for Failure to State a Claim (ECF No. 23) and plaintiff Cultural Care, Inc.'s ("CCI") Motion for Partial Summary Judgment (ECF No. 28). For the reasons stated herein, AXA's motion to dismiss is DENIED and CCI's motion for partial summary judgment is GRANTED.

## I. BACKGROUND

This is an insurance coverage dispute about whether AXA is obligated to insure CCI for its expenses incurred in defending a lawsuit against CCI (*Beltran, et al. v. Interexchange*, No. 14-cv-03074-CMA-CBS (D. Colo.)). CCI is a United States State Department-designated sponsor of *au pairs*, and as such is responsible for hiring and placing foreign national *au pairs* with host families in the United States. ECF No. 28 at 3–4. The underlying *Beltran* suit is a class action brought on behalf of *au pairs* alleging that *au pair* sponsors, including CCI, conspired to set *au pair* rates of compensation below market rate in violation of federal and state

1

minimum wage laws and in violation of racketeering, tort, and consumer protection laws. ECF No. 23-4 at 2, 7. The sponsor companies are accused of fixing rates at the price floor authorized by Fair Labor Standards Act ("FLSA") regulations of $195.75 per 45-hour work week, which amounts to $4.35 per hour. *Id.* at 3. According to the *Beltran* plaintiffs, this rate is below the federal minimum wage and several states' minimum wages. *Id.* at 49, 51–54, 76. The sponsors are also accused of misinforming the *au pairs* that they could not ask their host families to pay them above this price floor. *Id.* at 53.

AXA issued CCI liability insurance policies that were in effect during the relevant time period for the *Beltran* suit.[1] ECF No. 28 at 1. AXA has denied any duty to defend the *Beltran* suit and has not reimbursed CCI for its costs to defend the suit. *Id.* The first amended *Beltran* complaint was filed March 13, 2015. After CCI gave notice of the complaint, AXA denied coverage in two letters in April and July of 2015. ECF No. 28-5 at 2. The operative Second Amended Complaint in the *Beltran* suit was filed October 17, 2016 and asserts nine counts:

> Count I: Restraint of Trade in Violation of the Sherman Act;
> Count II: Civil Racketeering Influenced and Corrupt Organizations Act (RICO);
> Count III: Breach of Fiduciary Duty;
> Count IV: Negligent Misrepresentation;
> Count V: Constructive Fraud;
> Count VI: Consumer Protection;
> Count VIII[2]: Failure to Pay Minimum Wage and Overtime in Violation of FLSA;
> Count IX: Unpaid Wages under State Laws;
> Count X: Violations of New York Wage Act;

ECF No. 23-4 at 104–15.

---

[1] CCI was insured by AXA under two insurance policies during the period at issue in the *Beltran* complaint: Policy No. PCS001344(13), covering the period between October 2013 and October 2014 (ECF No. 23-1), and Policy No. PCS001344(14), covering the period between October 2014 and October 2015 (ECF No. 23-2). Because the Professional Liability Endorsement in the two policies is identical, for simplicity I will refer herein only to the first policy, filed at ECF No. 23-1.

[2] The Second Amended Complaint dropped Count VII, which alleged breach of contract and quasi-contract. *See* ECF No. 28 at 6.

According to the "Travel Agents and Tour Operators General and Professional Liability Policy," which is attached as Endorsement #8 of CCI's insurance policy with AXA, AXA agrees to "pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as Damages[3] because of a negligent act or negligent omission committed by the Insured . . . in the conduct of Travel Agency Operations[4] by the Named Insured" that occurs during the policy period and in the coverage territory. ECF No. 23-1 at 64. The policy also provides that AXA has a "duty to defend any Suit against the Insured seeking Damages on account of such . . . 'negligent act' or 'negligent omission' . . . to which this insurance applies, even if any of the allegations of the Suite [sic] are groundless, false, or fraudulent." *Id.*

The insurance policy also contains various exclusions. The two key exclusions at issue in these motions are Exclusions J and K, which provide that "[t]his endorsement does not apply to":

> [Exclusion] J. Any claim or Suit based upon or arising out of any violation of the Fair Labor Standards Act or any similar federal, state or local law pertaining to working conditions, hours, employee benefits or wages.
>
> [Exclusion] K. Any claim or Suit based upon or arising out of any Occurrence, act or omission, or offense by the Insured which is intentional, dishonest, fraudulent or malicious, or criminal, regardless of whether the resultant Damages were intended.

ECF No. 23-1 at 65–66.

In its complaint, CCI argues that AXA has a duty to defend CCI since the *Beltran* suit contains a negligent misrepresentation claim. ECF No. 1. CCI asserts that AXA breached the insurance policy when it failed to defend CCI with respect to the *Beltran* suit. *Id.* CCI also

---

[3] The policy defines Damages as "the monetary portion of any judgment, award or settlement provided such settlement is negotiated with the assistance and approval of the Company." ECF No. 23-1 at 69. Damages do not include punitive, exemplary, or multiples damages, civil fines, penalties (statutory or otherwise), fees or sanctions, non-monetary relief, or restitution, return, or disgorgement of any fees, funds, or profits. *Id.*

[4] The policy defines "Travel Agency Operations" as "all operations necessary to the conduct of a travel agency, meeting planner, cruise only agency or tour operator." ECF No. 23-1 at 70.

seeks a declaratory judgment that AXA is obligated to defend CCI in connection with the *Beltran* action. *Id.* In contrast, AXA contends that the suit as a whole, and the negligent misrepresentation claim in particular, arise from or are based on alleged violations of FLSA or similar wage laws, such that Exclusion J forecloses AXA's duty to defend. ECF No. 23 at 8. As a result, AXA moves to dismiss CCI's complaint. *Id.* For its part, CCI moves for partial summary judgment on its breach of contract claim. ECF No. 28. The motions have been fully briefed, and the Court heard oral argument on May 10, 2018. *See* ECF Nos. 23, 27, 28, 30–33.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving

4

party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### III. ANALYSIS

To determine whether AXA has a duty to defend, the Court must assess whether (1) AXA's duty to defend was triggered by the negligent misrepresentation claim in the underlying suit; and (2) if AXA's duty to defend was triggered, whether an exclusion eliminates AXA's duty to defend in this case. Because there are no relevant facts in dispute, the interpretation and application of policy language is a question of law. *CWC Builders, Inc. v. United Specialty Ins. Co.*, 134 F. Supp. 3d 589, 597 (D. Mass. 2015).

As an initial matter, I agree with the parties that Massachusetts law governs. *See* ECF No. 23 at 6, ECF No. 27 at 5. Because the Court is sitting in diversity, I must apply the conflict of laws principles of the forum state, Colorado. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2006). Under Colorado law, "an insurance contract is governed by the law of the state with the most significant relationship to the insurance contract," which in this case is Massachusetts. *Id.*

### A. The Negligence Claim in *Beltran* Suit Triggers AXA's Duty to Defend.

The first inquiry is relatively simple: does the *Beltran* complaint "state or adumbrate" a claim that triggers AXA's duty to defend CCI? The party alleging the duty—CCI, in this case—bears the initial burden of establishing that the complaint states such a claim. *See Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 568 N.E.2d 631, 633 (Mass. App. Ct. 1991). In this case, CCI has met its burden and established that the *Beltran* complaint states a claim for negligence that triggers AXA's duty under the policy.

To determine whether an insurer has a duty to defend a third-party action against its insured, the third-party complaint is matched with the policy provisions: "'if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.'" *Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co.*, 489 F.3d 71, 72–73 (1st Cir. 2007) (quoting *Sterilite Corp. v. Cont'l Cas. Co.*, 17 Mass. App. Ct. 316 (1983)). The complaint "need only show a possibility that the claims asserted against an insured are covered by the policy" in order to warrant coverage by an insurer. *Mount Vernon Fire Ins. Co. v. VisionAid, Inc.*, 91 F. Supp. 3d 66, 71 (D. Mass. 2015) *aff'd*, 875 F.3d 716 (1st Cir. 2017).

Under Massachusetts law, "where an insurer is obligated to defend an insured on one of the counts alleged against it, the insurer must defend the insured on all counts, including those that are not covered." *Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*, 76 N.E.3d 204, 210–11 (Mass. 2017). The fact that "some, or even many, of the underlying claims may fall outside the coverage does not excuse [the insurer] from its duty to defend." *Simplex Techs., Inc. v. Liberty Mut. Ins. Co.*, 706 N.E.2d 1135, 1137 (Mass. 1999). This is referred to as the "in for one, in for all" doctrine; if one claim triggers coverage, the entire suit is covered. *See Nat'l Union Fire Ins.*

*Co. v. Town of Norwood*, 267 F. Supp. 3d 320, 323 (D. Mass. 2017). Invoking the "in for one, in for all" doctrine in this case, CCI argues that the presence of the negligent misrepresentation claim in the *Beltran* suit triggers AXA's duty to defend the entire suit. ECF No. 27 at 7.

In this case, Count IV of the *Beltran* suit, which asserts that CCI and the other sponsors negligently misrepresented the nature of the stipend, triggers AXA's duty to defend. In Count IV, the *Beltran* plaintiffs allege that "the Sponsors made misstatements of material facts for the *au pairs*' guidance as set forth in preceding paragraphs, including but not limited to the legality and set nature of the wages." ECF No. 23-4 at 108, 51–54. In particular, the sponsor companies are accused of informing the *au pairs* that their wages were set at the FLSA programmatic wage floor ($4.35 per hour) and that they could not negotiate with their host families for higher wages. In reality, according to the *Beltran* plaintiffs, the *au pairs* had a right to negotiate for higher wages. Thus, in the negligent misrepresentation claim, the *Beltran* plaintiffs allege that the sponsors "failed to act with due care or competence when obtaining and relaying this information and had a duty to know that the information could not be true." *Id.* at 108. As a result of the sponsors' negligent misrepresentations, the *Beltran* plaintiffs "suffered damages when they were paid below minimum wage, when they paid to join their respective programs, and when they received wages lower than they otherwise would have." *Id.*

The negligent misrepresentation claim in the *Beltran* complaint fits into the insurance policy's coverage for "a negligent act" committed by CCI in the conduct of its "Travel Agency Operations." *See* ECF No. 23-1 at 70. The claim asserts that the defendant sponsors, including CCI, were negligent when they failed to act with due care when relaying false information about

7

the nature of the stipend and the *au pairs*' ability to negotiate higher wages.[5] Moreover, the alleged negligent misrepresentations were committed in the conduct of "Travel Agency Operations," as required by the policy. Advice given to *au pairs* fits into "Travel Agency Operations," defined in the policy to include "all operations necessary" to the sponsor's business. ECF No. 23-1 at 64, 70; *see also Colony Ins. Co. v. Expert Grp. Intl, Inc.*, No. 15-CV-02499-RPM, 2017 WL 2131368, at *3–*4 (D. Colo. May 17, 2017).[6]

Because the negligent misrepresentation count in the *Beltran* complaint alleges that CCI failed to exercise due care in relaying false information about wages to the *au pairs*, an act it committed in the conduct of its professional services—or at the very least, in the conduct of "all operations necessary" to its business—this claim triggers AXA's duty to defend CCI against the *Beltran* suit.

### B. Coverage Exclusions.

Once the policyholder has met its "initial burden of proving coverage within the policy description of covered risks . . . the burden shifts to the insurer to prove the applicability of any exclusion to coverage set forth outside of the insuring clause." *Camp Dresser*, 568 N.E.2d at 633. AXA argues in its motion to dismiss that its duty to defend CCI is precluded by one or more of the exclusions in the insurance policy.[7] ECF No. 23 at 7–15.

---

[5] "In general, Massachusetts courts treat negligent misrepresentation claims more as negligence actions than deceit actions, focusing on the degree of care exercised by the speaker in making the statement." *Cummings v. HPG Intern., Inc.*, 244 F.3d 16, 25 (1st Cir. 2001).

[6] *Colony* is an insurance coverage lawsuit related to the same underlying *Beltran* suit. Although the insurance policies at issue in *Colony* are unique from those at issue here, the Court's assessment in *Colony* is informative with respect to the Court's finding that advice given to *au pairs* constituted counseling services, and thus was professional conduct. *See* ECF No. 23 at 11; ECF No. 27 at 13.

[7] Although AXA's letters denying coverage for the *Beltran* action cite various additional exclusions (A, H, and G), *see* ECF No. 28-7 at 4, 4 n.5, AXA does not raise these exclusions in its motion to dismiss or in its response to CCI's motion for summary judgment. ECF Nos. 23, 30. As a result, I will consider any argument based on these exclusions to have been waived.

1. Exclusion J.

AXA relies primarily on Exclusion J, which, as noted, provides that the insurance policy does not apply to "[a]ny claim or Suit based upon or arising out of any violation of the Fair Labor Standards Act or any similar federal, state or local law pertaining to working conditions, hours, employee benefits or wages." ECF No. 23-1 at 66. AXA argues that the entire *Beltran* suit is premised on violations of the FLSA or similar wage laws, and thus that Exclusion J eliminates its duty to defend. *See* ECF No. 31 at 4 (arguing that the suit cannot "simply be sliced and diced up into counts"). In the alternative, AXA argues that even looking at the negligent misrepresentation claim in isolation, this claim is premised on alleged violations of the FLSA such that Exclusion J eliminates AXA's duty to defend. *Id.* ("[T]he negligent misrepresentation count itself is 'based upon or arising out of' a violation of the FLSA or similar laws.").

a. Gravamen of the Suit.

AXA first contends that Exclusion J eliminates its duty to defend the entire *Beltran* suit because the "gravamen" of the suit is alleged violations of the FLSA or similar wage laws. *See* ECF No. 23 at 2; ECF No. 31 at 2 ("the FLSA drives the entire Suit and is the very statute upon which the stipend at issue was calculated.").

This argument fails because the Court is not required to examine the gravamen of the suit as a whole as opposed to the claims therein to determine whether the exclusion eliminates AXA's duty to defend. Doing so would undermine the "bedrock principle" of Massachusetts insurance law of "in for one, in for all." *See Nat'l Union*, 267 F. Supp. 3d at 323. AXA's reasoning suggests that although the negligent misrepresentation claim in the *Beltran* suit triggers AXA's duty to defend CCI, the fact that much of the suit involves alleged FLSA and wage law violations would eliminate AXA's duty. *Cf. Simplex Techs.*, 706 N.E.2d at 1137

9

("That some, or even many, of the underlying claims may fall outside the coverage does not excuse [the insurer] from its duty to defend.").

AXA focuses on the fact that Exclusion J applies to any "Claim *or Suit*" to contend that the Court should identify the gravamen of the suit and find no duty to defend if the gravamen of the suit fits within the exclusion. However, if AXA intended for Exclusion J to apply to suits that were in large part driven by alleged violations of the FLSA or similar wage laws—even if the suits also contained claims unrelated to such violations—it should have written the insurance policy to explicitly convey this idea. *See City Fuel Corp. v. Nat'l Fire Ins. Co.*, 846 N.E.2d 775, 777 (Mass. 2006) ("Exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured."). As it stands, Exclusion J's reference to "Suits" does not imply that courts should identify the general "essence" of a suit to determine if it fits the exclusion. Instead, the exclusion will apply to suits as a whole only when they arise *entirely* or *exclusively* from a violation of the FLSA or similar wage laws, which is not this case.

This interpretation of Exclusion J is bolstered by comparing the exclusion with others in the policy, which are written more expansively. For example, Exclusion D applies to "[a]ny Claim or Suit, however caused, arising *directly or indirectly* out of" war or other military actions. ECF No. 23-1 at 65 (emphasis added). Exclusion R applies to "[a]ny Claim or Suit based on, *attributable to, related to, or in any manner arising out of* any actual or alleged" employment disputes. *Id.* at 67 (emphasis added). Finally, Exclusion AA applies to "[a]ny Claim or Suit based upon or arising, *in whole or in part*, out of any" sexual abuse and related conduct. *Id.* at 68 (emphasis added). These exclusions demonstrate that where AXA wanted exclusions to apply

10

broadly to suits that arose in part or indirectly from certain underlying acts, rather than exclusively or wholly from such underlying acts, it knew how to do so.

If AXA had written Exclusion J with such specificity, then it would be reasonable to find that the *Beltran* suit arose "in part" from an FLSA violation, since it contains one count that specifically alleges a violation of FLSA. *See* ECF No. 23-4 at 110. However, because AXA did not draft Exclusion J with such specificity, the implication is that the exclusion only applies to suits that arise *entirely* from a violation of the FLSA or other wage law, which this case does not.

Moreover, courts applying Massachusetts law have denied requests to "ascertain the gravamen of the underlying complaint" to determine whether insurance coverage is required. *UTICA Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc.*, No. 13-cv-11471-IT, 2014 WL 5475038, at *4 (D. Mass. Oct. 29, 2014), *aff'd* 820 F.3d 36 (1st Cir. 2016). In *UTICA* the insurer argued that the gravamen of the underlying complaint was unfair competition, which was excluded under the insurance policy. *Id.* While agreeing that the complaint alleged unfair competition, the court focused on the fact that the complaint also contained a claim of negligent interference, which was covered by the policy. *Id.* Thus, the negligence claim made "the complaint 'reasonably susceptible' to an interpretation that it states or adumbrates a claim for negligence," and the court found that the complaint as a whole was covered by the policy. *Id.*

The court in *Fodera v. Arbella Protection Insurance Company* came to the same conclusion with respect to an exclusion that applied to both a claim and a suit, like Exclusion J. No. 17-ADCV-126NO, at *3 (Mass. App. Ct. Jan. 25, 2018). The court assessed the factual allegations in the underlying complaint's two claims for breach of fiduciary duty and negligence. The court held that "most, if not all, of the acts underlying the breach of fiduciary count may lie outside of coverage" because an exclusion applied to these acts. *Id.* at *3. However, the court

concluded that "this narrow focus does not account for the theory of negligence asserted." *Id.* Because the insurer was required to defend the negligence claim, it was required to defend the entire suit. Thus, even when an exclusion applies to a "claim or suit," Massachusetts courts still examine the factual underpinnings of each claim, rather than the gravamen of the suit, to determine whether the exclusion applies.

None of AXA's cited cases supports its contrary assertion that the Court should examine the gravamen of the suit as a whole rather than the facts underlying each of the claims in the suit. First, in *Massamont Insurance Agency, Inc. v. Utica Mutual Insurance Company*, 489 F.3d 71, 75 (1st Cir. 2007), the court found that the insurer was not obliged to defend an arbitration demand when the gravamen of that demand—an alleged breach of a contract—was not covered by the policy. *Id.* at 73. *Massamont* is inapposite because the court's description of the "gravamen" of the case described the only substantive claim made in the demand; charges of negligence were set out in the background section of the arbitration demand, rather than as substantive claims therein. *Id.* As such, in highlighting the gravamen of the demand the court was not prioritizing the whole over its composite parts, but was merely summarizing the gravamen of the only substantive claim made in the arbitration demand.

Similarly in *Boston Housing Authority v. Atlanta International Insurance Company*, 781 F. Supp. 80, 84 (D. Mass. 1992), the court described the gravamen of the complaint simply to explain that there were no facts to support a claim for wrongful eviction, which might be covered under the insurance policy: "the gravamen of the Complaint involved the BHA's discriminatory racial practices rather than the breach of its duty to provide habitable living quarters." As in *Massamont*, the court in *Boston Housing Authority* was not assessing the essence of the suit as a

whole against the individual claims made therein, but was merely reaffirming that courts should look to the factual allegations of the complaint to determine the duty to defend.

Finally, in *Fireman's Fund Insurance Company v. Bromberg*, No. CIV. A. 98-02232F, 1999 WL 744022, at *2 (Mass. Super. Ct. April 2, 1999), the court found no duty to defend various complaints alleging intentional sexual molestation, which was excluded under the insurance policy. *Id.* at *3. The court noted that "although some counts in two of the complaints allege 'negligence,' the gravamen of the complaints is clearly sexual molestation." *Id.* at *2. However, in making this determination the court assessed each of the negligence claims in the complaints and found that the negligence asserted in each consisted of sexual abuse or resulted in sexual abuse. *Id.* As such, despite the court's reference to the gravamen of the complaint, the court in fact assessed the facts underlying the claims.

Even if the Court were to look at the "gravamen of the complaint" in this case, it is not clear that it would be alleged violations of the FLSA or other wage laws. The presence of alleged violations of the FLSA and other wage laws in the complaint does not dictate that these claims convey the "gravamen" of the complaint, as CCI suggests. Instead, the *Beltran* complaint centers in large part on an alleged conspiracy to fix prices, and as such it includes counts of antitrust violations and racketeering, along with violations of consumer protection and tort laws. In asking the Court to decide that the gravamen of the complaint is violations of the FLSA or other wage laws, AXA is asking the Court to decide which of the *Beltran* plaintiffs' allegations are their most essential. That is not the Court's role.

Thus, rather than identifying the gravamen of the *Beltran* complaint, the appropriate analysis involves examining the negligent misrepresentation claim to determine whether it arises from a violation of the FLSA or related wage laws and as such falls within Exclusion J.

b. Negligent Misrepresentation Claim.

AXA argues that even if the negligent misrepresentation claim were examined in isolation, Exclusion J eliminates AXA's duty to defend because (1) the claim cannot stand on its own absent the complaint's allegations of violations of the FLSA and other wage laws; and (2) the claim itself is inextricably intertwined with violations of the FLSA. I disagree. The negligent misrepresentation claim could stand on its own and is not derived from the FLSA. As such, Exclusion J does not apply to this claim.

i. The Negligent Misrepresentation Claim Is Independent of FLSA and Wage Law Claims.

AXA argues that the negligent misrepresentation claim cannot be separated from the factual underpinnings of the *Beltran* complaint associated with FLSA and other wage law violations. According to AXA, "the allegations of negligent misrepresentation do not exist in a vacuum as support for a freestanding negligent misrepresentation claim based on something other than the alleged violations of the [FLSA] or any similar federal, state or local laws on wages." ECF No. 23 at 10.

Contrary to AXA's argument, the negligent misrepresentation claim could stand on its own in the absence of any alleged violations of the FLSA or similar wage laws. Massachusetts courts interpret "arising out of" as a "but for" test by examining whether there would been a loss and a basis for the claim in the absence of the underlying conduct to which the exclusion applies (here, a violation of FLSA or state or federal wage laws). *Bagley*, 720 N.E.2d at 816. Here, the *Beltran* plaintiffs' allegation that CCI misrepresented that the *au pairs*' wages were nonnegotiable could stand on its own even if the complaint did not allege violations of the FLSA or other wage laws. Though the damages associated with the negligent misrepresentation claim include receiving less than minimum wage, they also include generally "receiv[ing] wages lower

than [the *au pairs*] otherwise would have." ECF No. 23-4 at 108. The *Beltran* plaintiffs' loss of the opportunity to negotiate for a higher wage because of the negligent misrepresentations is therefore not tied to minimum wage laws or the FLSA. As such, this claim does not "arise from" a FLSA violation, and Exclusion J does not apply to it.

This finding is supported by the court's conclusion in *Bagley*, in which an insurance company was not obligated to defend the insured hotel in a suit brought by a plaintiff alleging that the hotel's negligence led to her being attacked by a hotel guest. 720 N.E.2d at 815. The plaintiff's negligence claim had its genesis in, or arose out of, the illegal acts of the individual who attacked her. *Id.* As such, the insurer's duty to defend the negligence claim was eliminated by the insurance policy's illegal acts exclusion. *Id.* "It is the *source* from which the plaintiff's personal injury originates rather than the specific *theories of liability* alleged in the complaint which determines the insurer's duty to defend." *Id.* at 817 (internal quotations and citation omitted) (emphasis in original). Unlike in *Bagley*, where the negligence claim arose out of conduct that fell within an exclusion, the negligent misrepresentation claim in *Beltran* arises out of CCI's misrepresentations, which do not fall within Exclusion J. Similarly, the plaintiffs' resulting injury is the loss of higher wages they might have negotiated, rather than the loss of specific wages determined by the FLSA or any particular wage law. *See* ECF No. 23-4 at 108 ("They suffered damages when they . . . received wages lower than they otherwise would have."). As a result, *Bagley* does not indicate that Exclusion J applies to this claim.

This conclusion is not undermined by AXA's citation of *New England Mut. Life Ins. Co. v. Liberty Mutual Insurance Company*, 667 N.E.2d 295 (Mass. App. Ct. 1996). In that case an insurance policy's exclusion for claims arising out of discrimination applied to common law claims in a complaint that asserted violations of employment discrimination statutes. *Id.* at 298–

15

99. However, the complaint expressly asserted that each common law claim for relief "'aris[es] out of the defendants' discriminatory treatment'" of the plaintiff. *Id.* at 299. In this case, in contrast, the *Beltran* plaintiffs did not assert that the damage they suffered as a result of CCI's negligent misrepresentation arose from CCI's violation of the FLSA or other wage laws. Instead, the negligent misrepresentation claim has a distinct factual basis: CCI's statements. Similarly in *Saint Consulting Group v. Endurance Am. Specialty Co.*, 699 F.3d 544, 551 (1st Cir. 2012), a policy exclusion for claims arising out of Sherman Act violations was found to apply to claims asserting common law and RICO violations. However, in that case the common law and RICO claims were based on the same facts that supported the Sherman Act claims. *Id.* Here, in contrast, the facts supporting the negligent misrepresentation claim—CCI's communicating that the *au pairs* could not negotiate their wages—are distinct from the facts supporting the claims for FLSA and wage law violations, to which the exclusion applies. *See* ECF No. 23-4 at 112 (CCI violated the FLSA when it "failed to pay at least minimum wage for all hours worked" and when it "fail[e]ed to pay overtime.").

Because the negligent misrepresentation claim could stand independent of the other claims in the *Beltran* complaint to which Exclusion J applies, the negligent misrepresentation claim is not affected by the exclusion.

### ii. The Negligent Misrepresentation Claim Does Not Implicate the FLSA.

I also disagree with AXA's argument that the negligent misrepresentation claim asserts a misrepresentation of the FLSA's requirements such that Exclusion J eliminates AXA's duty to defend the claim. *See* ECF No. 30 at 16. AXA cites the fact that the stipend at issue is derived from FLSA regulations, so that "[b]y alleging that [CCI] misrepresented the stipend as a ceiling, the *Beltran* plaintiffs are alleging that [CCI] misrepresented and violated the FLSA and its legal

16

mandate to assure compliance with the FLSA." ECF No. 31 at 2. Similarly, AXA argues that because Department of State regulations require that sponsors give clear and truthful information about *au pairs*' wages and FLSA requirements, CCI's failure to accurately explain the nature of the stipend constituted a violation of the FLSA. *See* ECF No. 30 at 14 (citing 22 C.F.R. §§ 62.10(b), 62.31(j)). While it is true that the *Beltran* plaintiffs allege that CCI misrepresented that they could not receive more than the FLSA stipend, this claim does not depend on an alleged violation of the FLSA or on the fact that the stipend is determined according to FLSA regulations.

AXA's argument inaccurately characterizes the *Beltran* plaintiffs' negligent misrepresentation claim. The regulation codified at 22 C.F.R. § 62.10 provides that "[s]ponsors are responsible for the effective administration of their exchange visitor program(s)" and outlines these responsibilities. AXA focuses on § 62.10(b), which merely requires that sponsors provide "clear information and materials" related to the program, including employment terms and conditions and wage information. The *Beltran* complaint does not allege that CCI violated this section by failing to provide clear information; instead, the *Beltran* plaintiffs allege that CCI negligently misrepresented the nature of the FLSA wage floor as a ceiling. AXA also highlights 22 C.F.R. § 62.31(j), which requires sponsors to assure compliance with the FLSA's wage requirements. Again, the *Beltran* plaintiffs' negligent misrepresentation claim does not allege that CCI failed to comply with the FLSA's wage requirements in violation of § 62.31.

AXA's attempt to incorporate these regulations is simply its *post hoc* explanation for the negligent misrepresentation claim and does not accurately describe the basis for this claim as articulated in the *Beltran* complaint.[8] Ultimately, although the information CCI communicated

---

[8] I am not persuaded by AXA's citation to CCI's opposition in the *Beltran* suit in which CCI relied upon the State Department regulations to defend its stipend. *See* ECF No. 30 at 4. The relevant inquiry is

was *related* to the FLSA and prevented the *Beltran* plaintiffs from obtaining minimum wage, the negligent misrepresentation claim does not allege any violation of the FLSA or other wage laws as required by the express terms of the exclusion.

Because I agree with CCI that the negligent misrepresentation claim does not arise out of a violation of FLSA or a similar state or federal minimum wage law, I find that Exclusion J does not apply to this claim, and therefore it does not eliminate AXA's duty to defend the *Beltran* suit.

2. Exclusion K.

Exclusion K precludes coverage for "any Claim or Suit based upon or arising out of any Occurrence, act or omission, or offense by the Insured which is intentional, dishonest, fraudulent or malicious, or criminal, regardless of whether the resultant Damages were intended." ECF No. 23-1 at 66. AXA argues that because the gravamen of the *Beltran* action is an intentional wage-fixing scheme that violated FLSA and state and federal wage laws, the source of the *Beltran* plaintiffs' alleged injury in the complaint as a whole and in Count IV in particular is not negligence but intentional misconduct. ECF No. 23 at 14.

For the same reasons explained with respect to Exclusion J, I will not look at the gravamen of the complaint but at the facts underlying the negligent misrepresentation claim. Because, as noted above, the facts alleged in support of Count IV state a claim for negligence rather than for intentional conduct, Exclusion K does not eliminate AXA's duty to defend against this claim in particular or the *Beltran* suit as a whole.

3. Professional Duties.

AXA also argues that the *Beltran* action fails to allege a breach of professional duties as required to trigger the insurance policy. *See* ECF No. 23 at 12, ECF No. 30 at 19. According to

---

whether the *Beltran* complaint—as opposed to any subsequent briefing or argument—"states or adumbrates a claim" that is covered by the policy. *See Massamont*, 489 F.3d at 72–73.

AXA, the *Beltran* complaint alleges actions that CCI undertook in the course of ordinary activities rather than in the course of actions "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill." ECF No. 23 at 12 (quoting *Roe v. Federal Ins. Co.*, 587 N.E.2d 214, 217 (1992)). However, the insurance policy does not support AXA's argument.

First of all, there is no requirement in the insurance policy that the underlying act (in this case, negligent misrepresentation) occur in the course of professional duties. In this case, as noted, the policy applies to negligent acts committed "in the conduct of Travel Agency Operations," which are defined broadly as "all operations necessary to the conduct of a travel agency, meeting planner, cruise only agency or tour operator." ECF No. 23-1 at 70. AXA's argument that the acts must have occurred in the course of professional duties relies only on the fact that the insurance policy in this case "is denominated 'Professional Liability.'" ECF No. 30 at 19. This does not suffice.

Moreover, even if this policy did have such a requirement, this Court has found that sponsors' advice to *au pairs* about the nature of their wages constitutes "counseling services," and thus is deemed to have occurred in the course of the sponsors' professional duty. *Colony*, 2017 WL 2131368, at *3–*4. As a result, even if there were a professional duties requirement in this case, CCI's alleged misrepresentations would satisfy that requirement.

    4. <u>Pre-Existing Legal Obligation</u>.

Finally, AXA argues that the damages sought by the *Beltran* plaintiffs are simply unpaid wages they were owed under federal or state wage laws rather than damages flowing from a "negligent act or omission" by CCI. ECF No. 30 at 19. As such, AXA contends that the *Beltran* plaintiffs merely seek to have CCI fulfill a pre-existing legal obligation, which AXA is not

obligated to cover. ECF No. 23 at 13 (citing *Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 590–91 (1st Cir. 2004)). I disagree.

As noted, the *Beltran* complaint alleges that as a result of CCI's negligent misrepresentation the *au pairs* were denied the opportunity to negotiate higher wages with their employers. ECF No. 23-4 at 54. The *au pairs* thus seek damages resulting from having received wages "lower than they otherwise would have" if they had negotiated, along with the cost they paid to join their programs and the damages from being paid below minimum wage. *Id.* at 108. The portion of the damages sought for the wages the *au pairs* might have negotiated does not amount to a pre-existing obligation, since it might very well have been much higher than minimum wage, and in any event would have been paid by the host families rather than by CCI. The claim for damages the *au pairs* might have received thus does not amount to a request that CCI fulfill a pre-existing legal obligation and is not barred.

## ORDER

Because the *Beltran* suit includes a claim for negligent misrepresentation that triggers AXA's duty to defend, and because none of the policy's exclusions or other provisions eliminates AXA's duty to defend, I find that AXA is obligated to defend CCI for the entirety of the *Beltran* suit. As a result, AXA's motion to dismiss is DENIED, and CCI's motion for partial summary judgment on its breach of contract claim is GRANTED.

DATED this 15th day of June, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge